May it please the Court, Colin Hampson appearing for the Cahto Tribe of the Laytonville Rancheria. I would like to reserve three minutes of my time for rebuttal. Okay. Just keep an eye on that clock in front of you. Thank you, Your Honor. The Bureau of Indian Affairs' lack of jurisdiction to review the tribe's action to disenroll the Sloans is dispositive of this case. There's no dispute that because of the tribe's broad authority over internal membership matters that the BIA has no power to hear an appeal from that decision unless it can first show that the tribe has made an express delegation of that authority to the BIA. Is Ordinance 1 still in effect? Yes, Your Honor. It's still there. So someone – I'm not – I'm now talking about the Sloans or folks related to the Sloans, but someone claims to be a member of the tribe and approaches tribal officials and asks to be enrolled, and the tribe determines that this person should not be enrolled, the ordinance does give the BIA some review authority, doesn't it? If the – the ordinance does give the Bureau limited authority to review initial applications that are submitted if once the tribe has opened the rolls. Under Section 3 of the ordinance, the Enrollment Committee has the authority to establish times when enrollment applications may be submitted. Okay. So if we can distinguish enrollment from disenrollment. Yes, Your Honor. The tribe's position is clear that it feels that Ordinance 1 does not cover disenrollment. That's correct, Your Honor. The government – I have some follow-up questions. Yes, sir. I want to ask. So Ordinance 1 is still in effect. Someone can come in and say, I'm a member and the tribe pursuant to its internal regulations makes a decision. That's reviewable by the agency, correct? If the roll has been – if the roll was opened and the application was then submitted, that decision – and there was a denial, and it was appealed pursuant to the procedures in Section 6 of the ordinance, that would be reviewable by the BIA. Why can't these folks who've been disenrolled reapply? The – our position is that the – in order to reapply, the Sloans would need to – the tribe would need to essentially remove the disability of their disenrollment. There would be a two-step process before that they could apply. Does Ordinance 1 talk about what you're describing now? No, it doesn't. It's – I'm actually referring to – well, as indicated in our briefs. Does it use the word – does the ordinance use the word initial? It uses the word application. And it – under the tribe's – Has it happened over the history of this particular tribe that someone has been disenrolled and then is – later reapplies and is enrolled? Has that happened? That actually happened last year, Your Honor. One of the Sloans was reenrolled after the tribe determined – the general council, the governing body of the tribe, determined that they had made an error in disenrolling him because he had not accepted the benefits under the – under a reservation distribution plan, as they had previously found, and they reversed themselves. And then in a separate step, they considered an application to enroll. But that – So why can't these folks that are claiming they should be enrolled, that you've disenrolled, why can't they apply? As I said, their request – the tribe – that would be a request for reconsideration of the tribe's disenrollment decision that it made in – back in 1995. Does the ordinance talk about that? No, it doesn't. Her position is the ordinance governs enrollment. That is correct. Correct. That's the only thing you've ceded authority to the agency on is questions of enrollment. That's correct. But is there an ordinance that cover – that deals with disenrollment? No, there's not, Your Honor. Our position is that the tribe, when it disenrolled the Sloans, it exercised its reserved authority under Article 7A of the Articles of Association, which gives the general council, which is the governing body of the tribe, the authority to exercise the tribe's internal – or inherent authority over enrollment matters, which is recognized in Article 7. So basically you're saying that the tribe has an inherent authority to control membership? That is what the federal case has recognized, and that is what the Articles of Association recognize, that at least the Articles of Association vest in the general council the authority to address enrollment matters. I'm curious, then. You know, I think it was a few days after the 1995 vote, the tribe sent a letter to the BIA asking for approval of the disenrollment. And I'm curious why this letter was sent, and doesn't it demonstrate an understanding of the tribe that BIA approval was required? No. Those letters did not seek the Bureau's authority or Bureau's review of that decision. They related to the government-to-government relationship. They complained to the Bureau that the Bureau was providing information to others about the leadership of the tribe, which in their view did not reflect the effect of the disenrollment action. But in both of those letters – There was some language in there that could be interpreted as seeking approval from BIA for this. Respectfully, I don't think the language is – that that's what the letter said. The letter was requesting that the Bureau recognize the effect of the actions that the tribe took. It made very express – multiple statements expressing the tribe's view that it had exclusive authority to make these sort of determinations and was insisting that the Bureau recognize that. In terms of the effect of those letters, whatever they might be, whatever the court finds the effect of that might be, the Interior Board of Indian Appeals in its 2002 decision considered that and said and held whatever effect those letters might have had, they were – the Bureau exercised that authority by referring the matter back to the Bureau. But as I said respectfully, we don't – those letters do not – are not consistent with the assertion that the Bureau has the authority to review those. It was not a request for appeal or confirmation, but merely a request that the – that the Bureau, in carrying out its government-to-government relationship with the tribe, recognize the effect of the tribe's action that it took. I'm still trying to spin out my question about enrollment. I understand. So help me if you can. Let's say next week the members of the Sloan family who are presently disenrolled apply for enrollment, and the tribe says, we can't enroll you because you participated in this settlement. Are you saying that could not be appealed to the agency? That is correct, Your Honor. The – that would – Go to the agency and say, we think we're members of this tribe. We have applied for enrollment. They have refused to enroll us. And under Ordinance 1 of the tribe, that gives you, the agency, the authority to review enrollment decisions. And, Mr. or Mrs. Agency, that's all I'm seeking, is to ask that you review my – the tribe's failure to enroll me. That's correct, Your Honor. What's wrong with that? The – I think the tribe, as I indicated, the tribe's practice, a recent practice I recognize, but the tribe's practice treats this as a two-step process with respect to somebody who's been disenrolled. First, they need to decide whether there was some error in the prior disenrollment or they would otherwise decision or that they will otherwise change it. And then they would process an application like anyone else. That's the protocol that they followed in this most recent case. So what? Well, the general – How does that change the answer to the question once it's denied? For whatever reasons, for whatever process, the tribe goes through. They flip a coin. They, you know, spin a wheel. You know, whatever it is they do, they consult the records. They go through that process. At that point, the application is denied. Why wouldn't that be reviewable by the BIA? The – essentially because the determination involves a question of disenrollment, which the general counsel has not. That's – I'm sorry? In the hypothetical we're trying to work our way through, the members of the Sloan family are saying we're – we applied for enrollment. We were refused. This is an enrollment decision. Review it. I mean, I think that – I understand the hypothetical ignores the reality here. I mean, the hypothetical that where someone's been disenrolled, they have – the general counsel has already taken action with respect to their – has made a determination regarding their eligibility. And in order to – So once you're – Losing your driver's license. You – I don't mean you personally. You know, you get a DUI or something, and you lose your driver's license. And then you apply again, and let's say the license is denied. You say, well, you know, I've now applied for a driver's license, and it was denied. I'm appealing that decision. Why isn't that? Well, I think there's a – there's an important difference between enrollment and disenrollment decisions that – Let's say, okay, we were disenrolled. We buy it. You're right. We were disenrolled. We fully accept that. Now we want to come in and be enrolled. And I – if I may, the – I think the premise of the question assumes that enrollment and disenrollment decisions are interchangeable. No, no. I don't know that that's the case. No, not at all. But are you saying – it seems like you're saying that once you're disenrolled, you can never reapply? No. That what I'm saying is that you can certainly ask the general counsel to reconsider and that the general counsel is – has the power to reconsider. It has done so. I don't want to ask for reconsideration. I accept that I was disenrolled. There's nothing to reconsider. I was disenrolled. Now I am applying for enrollment. I am now, having been disenrolled, not a member of the tribe. I now apply for enrollment. Why isn't that an enrollment decision just like anything else, clearly covered by what your reading is of Ordinance 1? And then you can argue with the BIA as to whether there are good reasons or bad reasons or, you know, whatever. I think that's an overly broad reading of the Ordinance. Let's see if we can narrow it. This is a hypothetical question. I want you to imagine an individual in this exact circumstance of the persons who have been disenrolled but that was not involved in the disenrollment. They're not a member of the tribe, but they're somebody who participated in this settlement. And let's say they were overlooked or whatever. There's been no disenrollment decision made. And that individual walks in and files the application for enrollment. And the tribes, my guess is, would say, did you participate in that settlement? And the individual would say, well, yeah, I did. And the tribe says, we can't enroll you. That's our position. If you participate in the settlement, you can't be a member of this tribe. Would that be reviewable by the agency? I think in that hypothetical it would because the individual would not be. And that's the difference between that person and the Sloans. Well, in that part, the general counsel has not taken any action, made any determination regarding their disenrollment. In this case, I guess I would like to remind the Court that that hypothetical is not the facts. The facts of this case are not that hypothetical. It's a hypothetical question, counsel. Yes. But I guess to my mind. The worst response to make to a judge who asks you a hypothetical question is to say that's not this case. I understand, Your Honor. It's kind of smart to say, I don't have a good answer, but I'm. It's sort of like underlining. If I may, I'd like to briefly explain. I do think there is an important difference between enrollment and disenrollment in the general sense. And that's one of the premise of the government's argument here is that they are the same and interchangeable, but they're not. Whereas enrollment under the ordinance, for example, it treats them differently. An enrollment application is submitted and rejected or accepted, and it's the ‑‑ but the applicant is a nonmember. Whereas a denial is provided to ‑‑ it can be appealed, but those appeal rights are provided only under the limited terms of Section 6 and to a nonmember. Whereas when you're admitted to membership in a tribe, you are within the sphere of internal governance of the tribe, which is left to the tribe alone under the ‑‑ which the law long has recognized is within the exclusive power of the tribe unless expressly diminished. And whereas here where the general counsel is vested with the authority to make those sorts of disenrollment decisions, no other entity can review that decision without subordinating the tribes. At that point, you're no longer a member of the tribe, so all of these things you're saying don't apply because they've just kicked you out. So all of this stuff about internal governance and all that goes out the window. And so the ‑‑ my point is that the nature of the decision is distinct. It's different than if they said, you know, you remain a member of the tribe, but you can no longer serve on the general counsel. You know, that would be internal. But once they kick you out, you're out. My distinction, the distinction I'm drawing is the decision to disenroll somebody versus the decision to enroll somebody. I see I'm out of time. I'd like to reserve the remainder of my time for rebuttal if I may. I just had a quick question on intervention. I'm just trying to figure out how can the BIA adequately represent the Sloans, especially in light of the inconsistent positions they've taken? I mean, our position on intervention is simple, that the briefs show that the BIA and the Sloans, they don't essentially have the same objective of defending the BIA decision, and they don't show any significantly different view of the case, so that any differences really are matters of litigation strategy. If I'm able to answer more questions, but I want to make sure I have enough time for rebuttal. Well, you're really out of time. We'll see. Okay. Thank you. Okay. We'll hear from the other side. May it please the Court. I'm Elizabeth Ann Peterson from the Department of Justice on behalf of the Department of the Interior, and with me at counsel table is Susanna Eichels, who represents the Sloan parties as amicus in this case. Could I ask you, counsel, to speak up a little bit? Oh, I apologize. Right into the microphone. Okay. Thank you. Thank you, Your Honor. In 1995, the Caddo tribe took action to deprive the members of the Sloan family of all of the benefits of membership in a federally recognized Indian tribe. They did this on the incorrect ground that the receipt of a payment from the United States in conjunction with a settlement of potential claims involving the Hoopa-Yurok reservation amounted to affiliation with another tribe, which as a matter of federal law is simply incorrect. Now, although their governing documents provide that any person disapproved for enrollment in the tribe is entitled to appeal the disapproval to the Department of the Interior or to the BIA, that the BIA's action on the appeal here constituted an unauthorized intrusion into tribal sovereignty. As we've explained in our brief, we believe that the governing documents make ample authorization for the BIA to consider the Sloan's appeal. Do you agree that but for Ordinance 1, there would be no authority, right? It is Ordinance 1 that provides the authority on which BIA relies here, yes. Sounds like a yes. Yes. I have not addressed that particular question in my study of these documents. We rely on the clear, explicit authorization in the ordinance that allows any person to No matter how wrong you think they are or how, I mean, if they don't provide authority for review by the BIA, it doesn't exist, right? That is the law as we understand it under Santa Clara, yes, Your Honor. Okay. So because of solid immunity, right? Correct, Your Honor. And because of the lack of any implied cause of action to enforce the Indian I think it's waiver of solid immunity is what you would be looking at. I'm sorry. I'm sorry. I misspoke. There isn't a no. I actually, what I was referring to is the holding in Santa Clara, which is that there is no implied cause of action to enforce the Indian Civil Rights Act. So there isn't another way in which the impropriety here could be addressed, either by And when we look at Ordinance 1, Section 6, we owe the tribe some deference in how it's interpreted, or do we owe the BIA deference? Who do we owe deference to in this case? Your Honor, this document was approved by the BIA and was not effective until it was approved. Therefore, any reasonable interpretation of this has to be reasonable from the standpoint of both the BIA and the tribe. So I would not think deference to the tribe would be applicable here. In the event The position of the tribe is that Ordinance 1 deals only with initial enrollment. A person who applies for the very first time for enrollment and is refused by the tribe, they concede, I think, that that's reviewable by the agency. The agency's position is that the ordinance not only covers initial enrollment, but covers disenrollment. Correct? Correct. So what we're talking about is how to interpret the ordinance. And I have the same question my chief judge does, which is, don't we ordinarily defer in the interpretation of a tribal ordinance to the tribe's interpretation of the ordinance? Ordinarily, the tribe's interpretation, if it is reasonable, is entitled to deference. In this case, BIA approved this document absent that interpretation. BIA regards that interpretation as unreasonable. Therefore, BIA does not defer, and I do not believe the Court is obliged to defer to the tribe's unreasonable interpretation of the document. You said BIA approved. Yes. Was that based on the letters that were sent, that you're saying that was the approval? No. The ordinance itself, if you look at, I think it's excerpts of record page 86, you'll see at the bottom there's a little place for approval by the area director. Could the tribe repeal this ordinance? It has not been repealed. It has been. Could the tribe repeal this ordinance without the approval of the agency? At this time, Your Honor, my understanding of its articles of association Somebody has a device that's making a ding, an email ding. Whoever has it, please turn it off. Go ahead. It's my understanding that under the tribe's articles of association, a repeal of this ordinance would have to be approved by the BIA.  So a recognized tribe, but this is a recognized tribe, has the inherent authority to the inherent and unreviewable authority to determine who its members are in the absence of conceding review of that authority to the BIA. Is that a correct statement? I believe so, Your Honor, yes. But it cannot, once it gives that authority, whether the authority covers initial enrollment or disenrollment, once it does that, it can't take it back? It can take it back with the approval. It requires the approval of the agency. Yes, Your Honor. And it's my understanding that that's a very typical thing to happen, that ordinarily an initial organizing document under the IRA will include all of these approvals, all of these requirements for approval by the BIA, but the tribe will then, after it's organized, proceed to amend its documents to exclude those provisions. But suppose that, hypothetically, the tribe in this case accepted the BIA's determination that participation in this settlement is grounds for disenrollment, and they accepted that interpretation, that they had cited an incorrect reason, and they come back and they say, we're continuing to disenroll the members of the Sloan family because they're all Democrats. What would you do? Can the agency review that? Under the ordinance, we can review any appeal from a disapproval of by any person. And the standard is the reason has to be reasonable. That isn't the the Part 62 regulations do provide procedures. They do not provide a standard. I believe that that is ordinarily what the BIA would apply, would be a standard of reasonableness, but that isn't at issue in this case. And I'm not certain that that's uniform. This is an interesting aspect of tribal sovereignty that exists, that everybody agrees in the absence of a waiver, if you will, of that inherent internal authority. But in this instance, with respect to this tribe, they can't eliminate it. And any decision they make about enrollment or disenrollment is subject to the review of the BIA under a general reasonableness standard. Is that right? As I said, Your Honor, I believe that is probably the standard, reasonableness. I do not know that, whether that uniformly the standard is reasonableness. In this case, it was the BIA found that the the basis for the decision was reasonable. The reasonableness of the decision was not only unreasonable, but it was a misinterpretation of Federal law. So it may be that this case doesn't reflect the standard. I'm sorry. Reasonableness applies to interpretation of the ordinance, not the basis of the decision, is it? I believe the question went to the basis for the disenrollment decision, if I'm not misunderstanding it. That's correct. And in this case, certainly reasonableness would be the appropriate standard. This tribe had that authority when it organized. It gave it up, the BIA says, as to both initial enrollment and disenrollment. And every decision made by the tribe is irrevocably subject to the review of the BIA. No, Your Honor. They can amend their governing documents to remove those provisions that are required. If the agency approves. If the agency approves, which it routinely does. Tribes do this all the time. Well, let's look at Section 6 and maybe you can explain to me what's unreasonable about the tribe's interpretation of it. It certainly doesn't use the word disenrollment. It says enrollment, right? That is correct, Your Honor. So why what's unreasonable about interpreting it as applying for enrollment when it says enrollment? You know, enrollment meaning sort of enrolling. Disenrollment meaning taking somebody who's a member and kicking them out. As we explained in our brief, Your Honor, it's not entirely unreasonable to look at it that way. But the more reasonable way to consider it would be. It's partially unreasonable? I don't understand. What does it mean entirely unreasonable? You know, I asked you what the standard was for deference. And you said we don't have to defer if it's not, if it's unreasonable. I take it you were then sort of in a backwards, loyally way saying if it is reasonable, we do have to defer. I know it's going to be taking five minutes to get you to admit that. No, Your Honor. I can't say that. So you do agree with that, okay? I do not believe we're obliged to defer because this isn't a brief. You do agree that if it's unreasonable, if it's reasonable, we have to defer to it, right? Never mind. I knew it would take five minutes. So just take it as a given. Just accept it, okay? So what is unreasonable about this? Why is it perfectly reasonable to say this applies to enrollment, disapproved enrollment, because it says this applies to enrollment? What's unreasonable about that? We believe it's unreasonable because of the arguments we presented in our brief, which are that if the disenrolled individuals were then to reenroll, they would have the right that they've just been deprived of by the district police. I don't understand that. If they apply, we'd have a different case involving them applying, and then we'd consider that case. But that's not the case we have. We have a case involving disenrollment, and that's the case we decide. And when they decide to go ahead and apply again, then you'll be standing here again, and we'll see what happens. So I don't understand why that's a persuasive argument. Why isn't it reasonable? You know, and if you have any doubt about it, you know, about six lines down, it refers to applicant. You know, applicant sounds to me like somebody who is applying for enrollment. It has no relevance to somebody who is already a member. Somebody who is a member who is disenrolled is not an applicant for anything. We are aware that there are many references to applicant in here. The reason that we think it's unreasonable to apply this only to initial applications is because the consequences of disenrollment, which are the deprivation of all of the benefits of membership in a federally recognized tribe, are the same regardless. And they are significant, and they are extremely important rights. Why do the consequences matter? If the language says what it says, if waivers of sovereign immunity are narrowly construed, as they always are, why isn't the fact that it has consequences? I mean, they could do away with it completely. They didn't have to have this at all. And then they could flip a coin or disenroll people for being Democrats or for, you know, for whatever, you know, and it wouldn't be reviewable. So what? The – for one reason, the tribes articles of association authorize it to enact ordinances that are – that are compliant with tribal and Federal law. The Federal Indian Civil Rights Act would not allow that. So that would disqualify it. Not allow what? Not allow what? The arbitrary determination that people should be disenrolled or not. But it's not reviewable. If it's not reviewable, it's not reviewable. So we're not talking about the substantive decision. We're talking about the question of reviewability. No, but – It would allow – it would allow an ordinance that said no review.    It would allow an order to do all decisions of enrollment or disenrollment or have it submitted to say a person disapproved of enrollment or disenrollment shall be notified in writing that they are enrolled and disenrolled and have no appeal rights to the BIA whatsoever. Right? It could say that. I thought I was answering the question that you asked. I thought that the question that you asked was why the consequences matter. And my answer was that interpreting this to deprive some to allow an appeal from that deprivation for some people but not for other people, for people who have previously been enrolled, is an unreasonable way to look at it. But I have now invaded Ms. Eichel's time. Okay. Let's hear from her. Thank you. Good morning. I actually want to respond to the questions you asked, you raised, because as you may know, the amicus brief actually specifically addresses the question of deference and holds there should be no deference afforded to the tribe in these circumstances. Because? There's five reasons. First, and the most poignant, which was part of the story that the amicus brief sought to animate for you to understand the underlying events, are that these are the founding members of this tribe. Two of the elder slones were the people who signed these charter documents. They wrote these charter documents. You know, this is not a jury here. You know, we're dealing with law. So why don't you give us your strongest reason rather than the most poignant reason. What's, what's, what's? So first of all, with respect to the question that you asked about the articles of the Association and is the enrollment ordinance the only place where the BIA is involved, it's not. The articles actually specifically talk about the BIA at several points, at several junctures in the, in the document. They state repeatedly that the BIA is supposed to approve the ordinance and approve the membership role. Now, the question is what does approval mean? Does it mean what I believe the faction of the tribe would suggest, which is rubber stamping the document? Whatever is submitted to the BIA, they're supposed to approve, which means stamp it. Or does it mean you have to read and interpret it? My view. But which document are you talking about? The articles of the, of the Association. So at Article 3, which is the only article that addresses membership, in both A and in B, it states at the end of the first subsection of A, the membership shall be decided and shall be approved by the Commissioner of the Indian Affairs. Section B, where they talk about the membership role, which must be brought up to date annually in accordance with the procedures, at the end it again states approved by the Commissioner of the Indian Affairs. It's not just in the ordinance where they reference the BIA and its involvement in overseeing the due process rights of membership. It's embedded in the articles themselves. I'm not understanding at all what relevance this has. Are you claiming that this is a separate waiver of sovereign immunity? Yes. And I'm also saying that once it's like a contract, and we cited to the U.S. Supreme Court decision of C and L, at the point in time when it's, this is different in the sense that in the C and L case there were two contractual parties. Here you have the tribe. It's specifically referencing the BIA's involvement repeatedly in the charter documents. At that point the BIA is brought into and involved just like as if you had an arbitration clause. And it's not the deference that the tribe says, okay, I give you jurisdiction, but I tell you what that jurisdiction is. And then if you don't agree with what my decision is, I then decide you don't have jurisdiction to oversee it. It has to be at the point when you see that the BIA is specifically in the articles and has the right to evaluate its jurisdiction and the scope of what it is responsible to do, namely. The record is part of the ordinance that you were citing? Where was the? I'm sorry, what? You were citing the ordinance, the part of the ordinance that? I'm citing the Articles of Association, and that's. Where are those? They're in several places, but the one I'm looking at is AR000286. AR000286. They're not organized by AR number. They're organized by tabs. Where in the excerpts of record are they? In the appellees, it's ER089. Well, I have the amicus's excerpts. Yes, I can give it. That one is. That one has tabs. That one has tabs, yes. So if you look at tab 66. Tab 66. Okay. Tab 66, I'm with you. In Article III is the very first page. And if you look at the A and the B, at the first A, the preamble, I'll call it, or the first sentence, at the end of the sentence it states, approved by the Commissioner of the Indian Affairs. B is the membership role, which has to be brought up to date annually. That, too, at the end, says approved by the Commissioner of Indian Affairs. So you're claiming this is a separate basis for waiver of sovereign immunity? Yes. And there's other places. Was this in the blue brief? This is in the amicus brief, yes. Can we consider it if it's not raised in the blue brief? Well, this goes sort of to the separate appeal that's going on in terms of our right to be able to intervene and the arguments that we would make in addition to what the government's arguments would be made. I would, so until you reach that point, maybe that's, they're intertwined, the two appeals. But, yes, I would say that I think they should be considered. Okay. There's also several other places where they reference the federal law and the requirement of the BIA to be involved with that. And that's in Article VII, the powers of the general counsel. And those powers, what's important about that aspect with respect to the powers that they reference at Section A-4, where it states to enact ordinances, and then it goes on to state consistent with these articles of association and federal law governing future membership, loss of membership, adoption of members by the tribe. This requires an ordinance. The general, if you read the articles, the articles do not empower the tribe to make membership decisions except for by ordinance. There is only one ordinance, and that's Ordinance No. 1. So there's two choices that the faction, and I will refer to them as the faction because we vehemently disagree that they have ever been able, by coup, by violence, by changing the locks, by running around with guns, they claim to now represent this tribe. But we do not agree that they do. And that's the separate reason for why we've argued in our amicus brief that they owe no deference. This is an unusual situation where courts are allowed to look past it. Scalia. You still got lost in your argument. You start dropping footnotes. I apologize. And I just completely lost track of what you were saying. My point was that in addition to that. Well, what were you saying? My point was that in addition to the fact that there should be no deference because the government is involved in every aspect of the articles, the separate reason we don't believe there should be deference is because this, the faction is not representing the tribe. They're not speaking on behalf of the tribe. None of the conduct that occurred that resulted in the disenrollment of the entire Sloan family. How is that before us? It is before you by virtue of the amicus and the underlying facts. It is before you by virtue of the facts. It's not before you by virtue of the factual documents that we referenced that came from the record. All of those things have been do agency decisions. We don't, we don't just sort of make up cause of action here on appeal. Well. I mean, if you have a dispute as to who is really representing the tribe, that's something you have to, you have to take up with the agency. And then if you're not happy with the decision, you can bring in action for review of the decision. We can't just. Well, if you read one of the cases that we cited in the amicus, the Liu case, in that case it involved a murder by a Chinese, alleged Chinese representative. And in that case the court stated that if you claim sovereign immunity, you have a baseline requirement to prove up that you actually do speak on behalf of the sovereign. And the facts that we are citing to have been in the record throughout, we've made the same arguments down in the district court level that this group is not actually speaking on behalf of the tribe. I recognize that this is more for the color of why to undermine the argument of deference. And the much stronger argument is actually the documents themselves are replete and saturated with the concept that the Bureau is supposed to be involved in enrollment decisions specifically. But that is one of the reasons we wanted to submit our amicus, because the underlying facts are so disturbing and so clearly not the normal course of a claim of I. Didn't we accept your amicus brief? I'm sorry? Didn't we accept your amicus brief? Yes. So why are you arguing that we should accept it? Oh, I was just referencing the point that it's in the amicus brief with respect to the aspect of why. That's a separate argument of why there shouldn't be deference. But it's still an amicus brief. You can't raise issues that parties don't raise on appeal. Anyway, you're out of time. Okay. Can I ask her one question? Sure. The authority under the articles that you've referenced, which gives the Commissioner of Indian Affairs, is there still such a person? Has that title changed? Have the articles changed in other words? No, it references approval by the Commission of Indian Affairs. Yes. Has that title changed in some respect? Is that now the Director of the BIA, or is there still a person called the Commissioner? To my knowledge, I don't know the answer to that, Your Honor. That may be better for Ms. Peterson. But as I understand it, that is the, I think because of the hierarchy, they went first to the BIA rep. Here's my follow-on question. Is it your position that the approval authority given the Bureau in the documents, the founding documents, if you will, of the tribe, specifically the authority to periodically review the tribal roles and approve them, is that the source of the agency's ability to review disapprovals? It's one of the sources, yes. Section B is. And under this authority, the appropriate person within the agency, commissioner or whatever, could look at the roles and say, I've looked at your roles and, by the way, I don't see the Sloan family. Right. They should be on here. Right. That can be done? Yes. Okay. And just one last thing. That's what the tribe thought as well. And just if you look at R57 of the EIR, there's this new argument. It's not based on fact. It was in the inherent power. We didn't look to the ordinance in terms of how we made our decision to disenroll the Sloans. And EIR 57 at the top shows they actually used Section 3, A and B, and they referenced the ordinance as if they treated the Sloans as if they were reapplying for membership. I have just one more question. So these articles of association and the ordinances, what's their, I guess, relationship to one another? Do the articles of association, in your view, supersede the ordinances? I think they have to be read in tandem and they're complementary. So the articles address the types of powers different entities have. One of them specifically says the aspect of membership states that membership is solely decided by an ordinance. And if they conflict? Well, that's a good question. I don't know what the, I don't, it just, I suppose, if they conflict, I think in accordance with other law, you have to look at it in favor of the injured party, I would suppose. But I think under general contractual interpretation, if they conflict, you do your best to try to make them accord. And then I don't know in terms of if you're saying would the articles supersede the ordinance. My view would be that the ordinance would trump the articles. But if it's because they've explicitly stated that the only way to make them accord is to make them in accord,  then the only power they have is based in the ordinance for determining membership. There is no separate power under the articles for determining membership except for by ordinance. Okay. Thank you. Okay. Thank you. Okay. I think you are out of time. We'll give you a couple minutes for rebuttal since it's such a complicated case. Thank you, Your Honor. I'll be as brief as I can. I just want to respond to the arguments just made. On a factual point, the statement was made that the tribe would need BIA approval of a new enrollment ordinance. That was the case under the old Articles of Association. Under the new Articles of Association approved in 2006, now effective BIA approval is not required. And also turning to the argument that the first, the Articles of Association are like the tribe's constitution. They are the founding documents. So the relationship between them and the ordinance is that the articles supersede the ordinance if there is any inconsistency. The ordinance is like a statute. The ordinance is a statute approved by the general counsel. And the, in terms of the point about deference to the tribe's interpretation of tribal law that came up with government counsel's argument, the government actually concedes that the BIA owes deference to a reasonable interpretation of tribal law made by the tribe on page 22 of their brief. And then with respect to the effect of the BIA's role in the 1967 Articles of Association in approving a tribal enrollment ordinance, that is not the basis for expanding BIA review of any actions taken under that ordinance or under any other provision of law. All it says in Article 3 is that the membership role, first that the, in Article 3 it says the membership role shall be brought up to date annually in accordance with procedures established by an enrollment ordinance approved by the Commissioner of Indian Affairs. The Commissioner approves the ordinance, does nothing more. Similarly, under Article 7, the general counsel is, Article 7A, 7A4, the general counsel is authorized to enact ordinances consistent with these Articles of Association and federal law governing future membership, loss of membership, adoption of members by the tribe, use of ranchery land, conduct of elections, and other necessary ordinances. Actually, that doesn't even give them authority to approve it. But the approval authority does not give the BIA authority to review any and everything that might be done under the ordinance or under any other provision. Finally, the disenrollment does not need to occur under the enrollment ordinance. The reserved power clause on ER92 says expressly that the general counsel shall have the following powers, but their enumeration shall not be considered as depriving the tribe of any heretofore vested rights or powers which may be exercised through appropriate amendments, ordinances, or resolution. So the fact that the general counsel has the authority to enact an ordinance does not prevent the tribe, the general counsel acting as the tribe in the whole from taking any other action to act on behalf of the tribe, exercising the tribe's inherent authority over membership, which is recognized by the courts. That's all I have to say. Thank you very much. Thank you.
judges: Kozinski, Hawkins, Murguia